IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAZANDRA BARLETTI, individually, as natural parent and next friend of A.B. and C.B., minors, and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**CONNEXIN SOFTWARE, INC. d/b/a OFFICE PRACTICUM,**<br><br>*Defendant*. | Case No.  2:22-cv-04676-JDW |

**ORDER**

**AND NOW,** this 17th day of August, 2023, upon review of Defendant's Motion To Dismiss (In Part) Plaintiffs' And The Putative Class's Consolidated Complaint (ECF No. 58), I note as follows.

1.  A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (same). In determining whether a claim is plausible, the court must "draw on its

judicial experience and common sense." *Id.* at 786-87 (same). First, the court must identify the elements needed to set forth a particular claim. *Id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotation omitted). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citation omitted).

2. The Parties agree that Pennsylvania law applies, at least for the purposes of this Motion. Therefore, I focus my analysis on whether the Plaintiffs state claims under Pennsylvania law.

3. The Plaintiffs' Consolidated Class Action Complaint (ECF No. 49, the "Complaint") asserts separate claims for negligence and negligence *per se*. But negligence *per se* is not an independent cause of action, it's an "evidentiary presumption that, if established, constitutes proof of a breach of duty." *Simmons v. Simpson House, Inc.*, 224 F. Supp.3d 406, 413 (E.D. Pa. 2016). As at least one Pennsylvania court has explained, the "concept of negligence *per se* establishes the elements of duty and breach" of a negligence claim." *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014). Because negligence *per se* isn't an independent claim, I'll dismiss Plaintiffs Second Cause Of Action, and I won't reach whether HIPAA or the FTC Act can form the statutory basis for

negligence *per se*. The Parties can revisit that question later in the case in connection with the negligence claim.

4. Plaintiffs' Third Cause Of Action is for breach of fiduciary duty. When no fiduciary duty exists as a matter of law, fiduciary duties may arise from a confidential relationship in "circumstances where the relative position of the parties is such that the one has the power and means to take advantage of, or exercise undue influence over, the other." *Yenchi v. Ameriprise Fin.. Inc.*, 161 A.3d 811, 820 (Pa. 2017). Whether duties arise in such circumstances is fact specific, and they "appear[] when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Id*. at 820-21. Critically, this relationship must go "beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering influence'" through which the relying party cedes decision-making control *Id*. at 823.

5. Plaintiffs fail to state a claim for breach of fiduciary duty under Pennsylvania law, for two reasons. *First*, they don't allege any direct relationship between themselves and Connexin. In the one case the Parties cite that found a fiduciary duty, there was at least some direct interaction or affiliation between the plaintiff and the defendant because the plaintiff was a parishioner of a church and its clergy. *See Doe v. Liberatore,* 478 F. Supp. 2d 742, 765-71 (M.D. Pa. 2007). In this case, Plaintiffs allege only a direct relationship between themselves and their physicians. They don't assert that they knew about or

3

interacted with Connexin until the data breach occurred. *Second*, and more importantly, nothing in the Complaint suggests Connexin wielded the type of overmastering influence over Plaintiffs needed to create a fiduciary duty. Plaintiffs, through their physicians, relied on Connexin to maintain and secure their data. But there's no plausible allegation that Connexin deprived them of all decision-making power regarding who saw their data, where their data was sent, or whether their data was maintained at all, rather than erased. Their use of Connexin's services is the kind of "reliance on superior skill" that the Pennsylvania Supreme Court says is insufficient to create a fiduciary relationship. *Yenchi*, 161 A.3d at 823.

6. Plaintiff's claim is also distinguishable from the claims in *Wallce v. Health Quest Sys., Inc.*, No. 20 CV 545 (VB) 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021), because there's a difference between a health care provider that works with a physician to provide care and a third-party business vendor to a physician's practice. Practices use any number of third-party vendors to facilitate the business of medicine, including IT companies, accountants, HR companies, and billing companies. Those companies might have to see patient information. But they don't all owe fiduciary duties to the patients themselves; their duties run to the practices that are their clients.

7. Plaintiffs' Sixth and Seventh Causes Of Action are for breach of express and implied contracts. To plead a breach of contract, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract

4

and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenk & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Both claims fail at the first step—the existence of a contract.

8. Plaintiffs do not allege the existence of an express contract between them and Connexin. They point to a privacy policy and terms of use on Connexin's website, but they do not allege that they ever saw or encountered those materials. Plaintiffs argue that there does not have to have been an express meeting of the minds if the parties' outward and objective actions evidence a contract. And that's true as far as it goes. But they have not alleged any conduct that indicates any agreement between them and Connexin. Plaintiffs contend that they manifested their assent to Connexin's policy privacy and terms of use by providing their data to pediatric practices, but there's nothing about giving data to a doctor that manifests anything about Connexin. It certainly doesn't suggest agreement.

9. Plaintiffs also do not allege facts to establish an implied contract. An implied contract has the same essential elements as an express contract, but courts infer the obligation from acts in the light of the surrounding circumstances. *See Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009). The only "surrounding circumstance" that Plaintiffs identify is their provision of data to the pediatric practices on the assumption that the data would be secure. And maybe that's enough for a contract claim against the practices. But there's nothing in the Complaint to suggest that Plaintiffs

knew that they were giving their data to Connexin. Because they didn't know that they were giving the data to Connexin, they couldn't have had an agreement with Connexin, even by implication, just like they don't have implied contracts with all of the other vendors that the pediatric practices might employ.

10. Although Plaintiffs' direct contract claims fail, their Eighth Cause Of Action states a plausible claim as third party beneficiaries. A person is a third party beneficiary to a contract if the contracting parties "express[ed] an intention to benefit the third party in the contract itself" or if the "circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties . . . or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Scarpitti v. Weborg*, 609 A.2d 147 (Pa. 1992). There is no information in the Complaint about the contracting Parties' intent. However, the circumstances are such that recognizing the Plaintiffs' rights as third party beneficiaries is appropriate, at least at this preliminary stage of the proceedings. The contracts were meant to benefit the Plaintiffs by storing, maintaining, and securing their private medical data. According to the Complaint, Connexin breached that contract by failing to adequately secure that information. That's enough to plead a third-party beneficiary claim, and the Parties can provide me with more detail about the terms and circumstances of the contract after discovery.

11. To state a claim for unjust enrichment, a plaintiff must allege that (1) she conferred a benefit to the defendant, (2) the defendant appreciated the benefit, and (3) it would be inequitable for the defendant not to pay for it. *Melmark, Inc. v. Schutt by and Through Schutt*, 206 A.3d 1096, 1110-11 (Pa. 2019). The Plaintiffs don't sufficiently plead the first element. Although they claim that Connexin funded its security efforts by payments made by or on their behalf, nowhere in the Complaint do they assert facts regarding how their money flowed to Connexin. They don't plead that they paid Connexin directly. They don't plead that they paid the physicians to secure their data, which the physicians passed on to Connexin. They don't even plead that the physicians billed their insurance to pay Connexin for data maintenance and security. To be sure, the pediatric practices paid Connexin, and the pediatric practices earned money from the members of the putative class. But without some direct tracing of the money, funding a business that pays another business is not enough to constitute the conferral of a benefit. The absence of any direct payment passed on to Connexin distinguishes this case from those the Plaintiffs cite. *See, e.g.*, *Aetna, Inc. v. Health Diagnostic Lab'y Inc.*, No. 15-cv-1868, 2015 WL 9460072 at *7 (E.D. Pa. Dec. 28, 2015) (defendant received proceeds of payments plaintiff made to an intervening party); *White v. PNC Fin. Servs. Grp., Inc.* No. 11-cv-7928, 2014 WL 4063344 (E.D. Pa. Aug. 18, 2014) (plaintiffs paid insurers premiums that were directly passed on to the re-insurer defendant). Because Plaintiffs don't sufficiently plead a pass-through benefit to Connexin, they don't state a claim for unjust enrichment.

Therefore, it is **ORDERED** that Defendant's Motion To Dismiss (In Part) The Plaintiffs' And The Putative Class's Consolidated Complaint (ECF No. 58) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiffs' Second, Third, Sixth, Seventh, and Ninth Causes Of Action are **DISMISSED**;

2. The Motion is **DENIED** as to all other remaining claims.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.