## IN THE UNITED STATES DISTRICT COURT
## FOT THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KAZANDRA BARLETTI, individually, as natural parent and next friend of A.B. and C.B., minors; ANDREW RECCHILONGO; SHARONDA LIVINGSTON, individually, as natural parent and next friend of K.J., a minor; BRADLEY HAIN, individually, as natural parent and next friend of N.H. and T.H., minors; and HAILEY JOWERS, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>CONNEXIN SOFTWARE, INC. d/b/a OFFICE PRACTICUM,<br><br>     Defendant. | Case No. 2:22-cv-04676-JDW<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Jonathan Shub
Benjamin F. Johns
Samantha E. Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
(610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

Bart D. Cohen
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
(215) 274-9420
bcohen@baileyglasser.com

*Interim Co-Lead Class Counsel*
*[Additional Counsel on Signature Page]*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

III.   THE PROPOSED SETTLEMENT AGREEMENT .................................... 5

IV.   LEGAL STANDARDS ................................................................................. 8

    A.   The Two-Step Procedural Process for Settlement Approval ...................... 8

    B.   The Fed. R. Civ. P. 23(e) Standard for Fairness ........................................ 9

    C.   The *Girsh, Prudential,* and *Baby Products* Standards for Fairness ........................... 9

V.    ARGUMENT ............................................................................................... 10

    A.   The Settlement Satisfies the Applicable Rule 23(e), *Girsh, Prudential,* and *Baby Products* Requirements ......................................................................... 10

        1.   The Complexity, Expense and Likely Duration of the Litigation ................. 10

        2.   The Reaction of the Class to the Settlement .................................................. 11

        3.   Stage of Proceedings and Amount of Discovery Completed.......................... 11

        4.   Risks of Establishing Liability, Damages and Maintaining Class Status Through Trial ............................................................................................... 11

        5.   The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation............................................ 13

        6.   The Additional Prudential and Baby Products Factors Support the Fairness of the Settlement............................................................................................. 14

        7.   The Proposal Was Negotiated at Arm's Length [Fed. R. Civ. P. 23(e)(2)(B)] 14

        8.   The settlement provides for an effective method of distributing relief to the class, including through a simplified claims process [Fed. R. Civ. P. 23(e)(2)(C)(ii)]............................................................................................. 15

        9.   The proposed attorneys' fee award is reasonable [Fed. R. Civ. P. 23(e)(2)(C)(ii)]............................................................................................. 15

        10. The Settlement Treats Class Members Equitably Relative to Each Other [Fed. R. Civ. P. 23(e)(2)(D)].................................................................................. 16

        11. There are no additional agreements required to be identified [Fed. R. Civ. P. 23(e)(2)(C)(iv)].......................................................................................... 16

    B.   The Court Should Certify the Class for Settlement Purposes ................................... 17

        1.   The Class Is Sufficiently Numerous .............................................................. 17

        2.   There Are Questions of Law or Fact Common to the Class ........................... 17

        3.   The Class Representatives' Claims Are Typical of the Claims of the Class .. 18

4.  The Class Representatives and Co-Lead Counsel Will Fairly and Adequately Represent the Class ........................................................................................ 19

5.  Common Issues Predominate over any Individual Issues and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy ........ 20

C.  The Notice Program Provides Class Members with the Best Notice Practicable Under the Circumstances ........................................................................................... 22

1.  Notice Will Reach Significant Numbers of Class Members ......................... 23

2.  The detailed notice form, and settlement website clearly and concisely inform Class Members about their rights and options, including how to file a claim 23

VI.    CONCLUSION ............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ahrendsen v. Prudent Fiduciary Servs., LLC*,
  No. 21-cv-2157, 2023 WL 4139151 (E.D. Pa. June 22, 2023) ........................................... 15

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................... 17, 21

*Breneman v. Keystone Health*,
  No. 1:22-cv-01643 (Pa. Com. Pl. Aug.  2023) ....................................................................... 1

*Caddick v. Tasty Baking Co.*,
  No. 2:19-cv-02106-JDW, 2021 WL 1374607 (E.D. Pa. Apr. 12, 2021) .............................. 8

*Checchia v. Bank of Am., N.A.*,
  No. 21-cv-3585, 2023 WL 2051147 (E.D. Pa. Feb. 16, 2023) ............................................ 17

*Fulton-Green v. Accolade, Inc.*
  No.  18-cv-274, 2019 WL 316722 (E.D. Pa. Jan. 23, 2019). .................................. 17, 18, 21

*Fulton-Green v. Accolade, Inc.*,
  No. 18-cv-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ................................. 11, 12, 20

*Gaston v. FabFitFun, Inc*.,
  No. 2:20-cv-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ........................ 12

*Gates v. Rohm & Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008) .................................................................................... 17, 21

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ............................................................................................ 8, 9

*Hall v. Accolade, Inc.*,
  No. 17-3423, 2019 WL 3996621 (E.D. Pa. 2019) ............................................................. 18

*In re Baby Products Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) ............................................................................................. 10

*In re Canon U.S.A. Data Breach Litig.*,
  No. 20-cv-6239-AMD-SJB, 2023 WL 7936207 (E.D.N.Y. Nov. 15, 2023) ................. 15, 23

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013) .......................................................................................... 13

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .................................................................................................. 9

*In re Hope College Data Sec. Breach Litig.*,
    No. 1:22-cv-01224-PLM, 2024 WL 47494 (W.D. Mich. Jan. 3, 2024) ............................... 1

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.*,
    296 F.R.D. 351 (E.D. Pa. 2013) ............................................................................................ 19

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
    No. 17-cv-341, 2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) ............................................ 16

*In re Nat'l Football League Players Concussion Injury Litig.*,
    775 F.3d 570 (3d Cir. 2014) ................................................................................................. 22

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    961 F. Supp. 2d 708 (E.D. Pa. 2014) ..................................................................................... 8

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014) ..................................................................................... 17, 24

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016) ..................................................................................... 13, 16, 18

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1999) ........................................................................................... 10, 14

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
    No. 13-md-2445, 2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) ..................................... *passim*

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ..................................................................................... 11, 17, 24

*In re Wawa, Inc. Data Sec. Litig.*,
    No. 19-cv-6019, 2021 WL 3276148 (E.D. Pa. July 30, 2021) ....................................... 20, 21

*In re Wawa, Inc. Data Sec. Litig.*,
    No. 19-6019, 2022 WL 1173179 (E.D. Pa. Apr. 20, 2022) ............................................ 12, 13

*In re Wawa, Inc. Data Sec. Litig.*,
    85 F.4th 712 (3d Cir. 2023) ................................................................................................. 16

*In re Wawa, Inc. Data Sec. Litig.*,
    No. 19-cv-6019, 2023 WL 6690705 (E.D. Pa. Oct. 12, 2023) ..................................... *passim*

*In re Wright & Filippis, LLC Data Sec. Breach Litig.*,
    No. 2:22-cv-12908-SFC, 2024 WL 81304 (E.D. Mich. Jan. 4, 2024) .................................. 1

*Jackson v. Wells Fargo Bank, N.A.*,
    136 F. Supp. 3d 687 (W.D. Pa. 2015) .................................................................................. 14

*Kelly, v. Santander Consumer USA, Inc.,*
No. 20-cv-3698, 2023 WL 8701298 (E.D. Pa. Dec. 15, 2023) ...................................... 13, 14

*McDermid v. Inovio Pharms., Inc.,*
No. 20-cv-01402, 2023 WL 227355 (E.D. Pa. Jan. 18, 2023) ............................................ 12

*McIntyre v. RealPage, Inc.,*
No. 18-cv-03934, 2023 WL 2643201 (E.D. Pa. Mar. 24, 2023) ........................................ 15

*Meyers v. Onix Grp., LLC,*
No. 23-cv-2288-KSM, 2023 WL 4630674 (E.D. Pa. July 19, 2023) .................................. 19

*Mullane v. Central Hanover Bank & Trust Co.,*
339 U.S. 306 (1950) ........................................................................................................... 22

*Nelson v. Connexin Software Inc.,*
No. 2:22-cv-04676-JDW, 2023 WL 2721657 (E.D. Pa. Mar. 30, 2023) ..................... 3, 4, 5

*Perry v. FleetBoston Fin. Corp.,*
229 F.R.D. 105 (E.D. Pa. 2005) ........................................................................................ 12

*Reibstein v. Rite Aid Corp.,*
761 F. Supp. 2d 241 (E.D. Pa. 2011) ................................................................................. 12

*Ricci v. Newrez LLC,*
No. 5:22-cv-0650, 2023 WL 6879344 (E.D. Pa. Oct. 17, 2023) ......................................... 8

*Rossini v. PNC Fin. Servs. Grp., Inc.,*
No. 18-cv-1370, 2020 WL 3481458 (W.D. Pa. June 26, 2020) ......................................... 15

*Stechert v. Travelers Home & Marine Ins. Co.,*
No. 17-cv-0784-KSM, 2022 WL 2304306 (E.D. Pa. June 27, 2022) ................................. 14

*Sullivan v. DB Invs., Inc.,*
667 F.3d 273 (3d Cir. 2011) ........................................................................................ 16, 21

*Tyson Foods, Inc. v. Bouaphakeo,*
577 U.S. 442 (2016) ........................................................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ........................................................................................................... 18

*Walsh v. Great Atl. & Pac. Tea Co., Inc.,*
726 F.2d 956 (3d Cir. 1983) .............................................................................................. 16

**Constitutional Provisions & Statutes**

28 U.S.C. § 1715 ..................................................................................................................... 24

**Rules & Regulations**

Fed. R. Civ. P. 23(a) .......................................................................................................... 18, 19

Fed. R. Civ. P. 23(b) .......................................................................................................... 20, 21

Fed. R. Civ. P. 23(c) .......................................................................................................... 23

Fed. R. Civ. P. 23(e) .......................................................................................................... *passim*

## I.    INTRODUCTION

Plaintiffs and Defendant Connexin Software, Inc. d/b/a Office Practicum ("Connexin") have reached an agreement to resolve this class action for a $4 million non-reversionary common fund, plus certain business changes intended to strengthen Connexin's data and information security. This case arises out of a data security incident at Connexin involving the personally identifying information ("PII") and protected health information ("PHI") of Plaintiffs and approximately 3 million others (the "Data Security Incident"). The proposed settlement provides Plaintiffs and Settlement Class Members with three options: (i) expanded identity theft protection lasting three years, plus up to $1,000,000 in insurance; (ii) reimbursement for out of pocket losses they incurred or time that they spent as a result of the Data Security Incident, up to $7,500 per class member; or (iii) a flat-fee alternative cash payment, the amount of which will depend on the number of valid claims submitted for options (i) and (ii). The settlement also provides for significant non-monetary relief in the form of business changes intended to strengthen Connexin's data and information security, which is a material and enforceable term of the settlement agreement.

This settlement structure, which has been approved by other courts[1] and which was reached with the assistance of mediator Hon. Diane M. Welsh (Ret.) of JAMS, represents a strong result for settling class members – particularly under the circumstances. As discussed in more detail below, Connexin's financial condition raised the real possibility that the company would seek bankruptcy protection had the case proceeded substantially further,

---

[1] *See, e.g., Breneman v. Keystone Health*, No. 1:22-cv-01643 (Pa. Com. Pl. Aug. 2023) (final approval granted); *In re Hope College Data Sec. Breach Litig.*, No. 1:22-cv-01224-PLM, 2024 WL 47494 (W.D. Mich. Jan. 3, 2024) (preliminary approval granted); *In re Wright & Filippis, LLC Data Sec. Breach Litig.*, No. 2:22-cv-12908-SFC, 2024 WL 81304 (E.D. Mich. Jan. 4, 2024) (preliminary approval granted).

much less to judgment. The parties were well-aware of each other's strengths and weaknesses by virtue of the Court's ruling on Connexin's partial motion to dismiss, their exchange of thousands of pages of documents, nearly a dozen depositions, and mediation-related discovery and analysis directed at Connexin's finances. Rather than prolonging the litigation, Plaintiffs have reached a settlement that will immediately provide them and class members with significant benefits for their injuries arising from the Data Security Incident.

Accordingly, the instant motion asks the Court to enter an order preliminarily approving the settlement ("Settlement") detailed in the Settlement Agreement, certifying the class for purposes of settlement (the "Class"), directing that notice of the Settlement be disseminated to members of the Class ("Class Members") and scheduling a final hearing no earlier than 120 days following the entry of a Preliminary Approval Order.

Connexin does not oppose the relief sought in this motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Connexin is an electronic medical records vendor that primarily serves pediatric practices. In the course of its operations, Connexin is entrusted with the sensitive personal and medical information of its customers' patients and their guardians as personal data of its employees. Connexin first began notifying existing employees on September 29, 2022 and began contacting pediatric practice customers on October 4, 2023 that it had been made aware of unusual activity on its computer network, and may have been the target of a data security incident. Thereafter, several putative class actions were filed in this Court.[2]

The Court consolidated these cases and convened an initial status conference on

_____

[2] *See* Declaration of Benjamin F. Johns ("Johns Decl."), filed contemporaneously herewith, at ¶ 2.

January 11, 2023. Following motion practice, the Court appointed two attorneys as Interim

Co-Lead Counsel for Plaintiffs (Benjamin F. Johns and Bart D. Cohen), along with a Plaintiffs

Steering Committee comprised of five additional attorneys. *Nelson v. Connexin Software Inc.,*

No. 2:22-cv-04676-JDW, 2023 WL 2721657, at *2 (E.D. Pa. Mar. 30, 2023).

On April 28, 2023, Plaintiffs filed the operative Consolidated Amended Complaint

("CAC"). The CAC alleges that Connexin negligently failed to take reasonable measures to

protect the highly sensitive PII and PHI that Plaintiffs and class members entrusted to it. CAC

¶ 115. Plaintiffs allege that they and putative class members are now at a significantly

increased risk of fraud, identity theft, and similar forms of criminal misconduct. CAC ¶ 9.  All

Plaintiffs allege that they have spent and will continue to spend significant time mitigating

the harm resulting from the Data Security Incident. *Id.* Plaintiffs sought to represent a

nationwide class comprised of all persons whose PII and PHI were compromised in the Data

Security Incident. *Id.* ¶ 162. Alternatively, they sought to represent identical state-wide classes

of residents of Pennsylvania, Texas, and Tennessee.[3] *Id.* ¶ 163.

On May 26, 2023, Connexin filed a motion to dismiss six of the seven remaining

claims in the CAC: negligence *per se*, breach of fiduciary duty, breach of express contract,

breach of implied contract, breach of contracts to which Plaintiffs and the class were intended

third party beneficiaries, and unjust enrichment.[4] Connexin did not move to dismiss the

negligence claim. After the motion was fully briefed, the Court granted the motion to dismiss

all of the disputed remaining claims in the CAC with the exception of the count for breach of

---

[3] Texas Plaintiff Ikram Chowdhury filed a notice of voluntary dismissal on November 14, 2023, thus leaving Plaintiffs with class representatives from only Pennsylvania and Tennessee.

[4] Plaintiffs voluntarily dismissed their breach of confidence and intrusion upon seclusion claims after meeting and conferring with Connexin. ECF No. 56.

contracts to which Plaintiffs were intended third-party beneficiaries. *Barletti v. Connexin Software, Inc. d/b/a Office Practicum,* No. 2:22-cv-04676-JDW, 2023 WL 6065884, at *2 (E.D. Pa. Aug. 17, 2023).

Meanwhile, on July 7, 2023, the Court issued a Scheduling Order which, *inter alia*, required Plaintiffs to file their motion for class certification by December 22, 2023 and complete all discovery by April 26, 2024.[5]  The parties worked diligently on meeting these deadlines while simultaneously briefing the motion to dismiss. Those efforts included the following: (a) the parties exchanged initial disclosures on May 19, 2023; (b) Plaintiffs served document requests and interrogatories to which Connexin responded; (c) Connexin produced (and Plaintiffs' counsel reviewed) nearly 35,000 pages of documents, plus over 200 native files; (d) Connexin took the depositions of all five Plaintiffs; (e) Plaintiffs' counsel took the depositions of six Connexin witnesses; (f) Plaintiffs' counsel subpoenaed 20 of the relevant pediatric practices from across the country; and (g) Plaintiffs' counsel also served third party subpoenas on Pamlico Capital Corp. and several vendors that worked with Connexin in the aftermath of the Data Security Incident. *See* Johns Decl. at ¶¶ 8-11. The parties agreed to participate in a mediation with Judge Welsh on November 13, 2023. *Id.*, ¶ 12.  In preparation for the mediation, Plaintiffs delivered a proposed term sheet to Connexin, and both sides submitted to Judge Welsh and exchanged mediation briefs. *Id.* Connexin made clear from the outset of the mediation that its ability to fund a settlement was something far less than what Plaintiffs had previously believed. *Id.*, ¶¶ 12-13. After Plaintiffs' substantially reduced demands were met with marginally increased offers by Connexin, Plaintiffs ended the

---

[5] ECF No. 62. The Court later extended these deadlines in deference to the parties' efforts to resolve this matter with Judge Welsh.

mediation, with the expectation of engaging expert assistance to reassess Connexin's finances before negotiating any further. *Id.*, ¶¶ 13-14.

Plaintiffs provided their experts with Connexin financial documents, and the experts responded with a list of additional documents they wanted to review. *Id.*, ¶ 14. Plaintiffs delivered that list to Connexin, and Connexin produced additional documents. *Id.* The parties used this data to aid their ongoing negotiations through Judge Welsh. Plaintiffs were ultimately satisfied that accepting the $4 million cash fund, in addition to business improvements, that had been offered by Connexin was in the best interest of Plaintiffs and all class members. *Id.*, ¶¶ 16-17. The parties executed a term sheet on January 19, 2024. On February 14, 2024, they executed the Settlement Agreement. *Id.*, ¶ 16.

## III. THE PROPOSED SETTLEMENT AGREEMENT

The proposed settlement seeks to resolve this matter on behalf of Plaintiffs and the following Settlement Class:

> All natural persons whose Personal Information was compromised in the Data Security Incident that Connexin discovered on or around August 26, 2022.

The Settlement Agreement provides that Connexin will pay $4,000,000 into a non-reversionary common fund (the "Common Fund"). Provided that the Settlement later receives final approval, the Common Fund will be applied to payment of class member claims, notice and administration expenses and any Court-approved attorneys' fees, litigation expenses, and Plaintiff service awards. To the extent that any monies remain in the Net Settlement Fund more than 120 days after the distribution of all Settlement Payments to the class members, a subsequent Settlement Payment will be made to all Class Members with Approved Claims for monetary payments under two specific categories and who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than

$3.00. The distribution of this remaining Net Settlement Fund shall continue until the average payment amount in a distribution is less than $3.00, whereupon the amount remaining in the Net Settlement Fund, if any, shall be distributed by mutual agreement to a Court-approved non-profit recipient.

The three options that the Settlement Agreement provides to Plaintiffs and Class Members are as follows:

1. <u>Expanded credit monitoring and insurance services ("CMIS")</u>:  Class Members will be entitled to claim credit monitoring and insurance services covering three years, and offering up to $1,000,000 in identity theft insurance. Class Members can elect this option by simply indicating as much on a claim form, and without providing any supporting documents.

2. <u>Reimbursement for Actual Out-of-Pocket Losses and Attested Time</u>. Class Members may alternatively submit a claim for actual out of pocket losses fairly attributable to the Data Security Incident and time spent dealing with it for up to $7,500 per individual. That figure includes expenditures for buying credit monitoring products and making payments for fraudulent transactions more likely than not related to the breach. While reimbursement of these actual expenses will require documentary support to be submitted with the claim form, Class Members can also elect to receive $30 per hour of up to five hours for their time spent dealing with the Data Security Incident by so indicating under penalty of perjury. Claims for this category that are deemed deficient (and that cannot be cured by a Class Member after a reasonable period of time) will be placed in the "Alternative Cash Payment" category below, rather than being denied outright.

3. <u>Alternative Cash Payment.</u>  Class Members may alternatively seek to receive a flat-fee payment. The amount of the Alternative Cash Payment will be determined after amounts sufficient to pay valid claims for the first two categories above (and Court-approved attorneys' fees, expenses, service awards and other expenses) have been deducted from the Settlement Fund.

Based on Plaintiffs' counsel's experience in other similar cases, we expect that the vast majority of claimants will choose the "alternative cash payment" category. For example, in *Breneman, supra,* in which interim lead counsel here Mr. Johns was co-lead counsel, approximately 13% of the claims submitted were for CMIS and less than 1% sought reimbursement for actual time and expenses.

In addition to these direct benefits, Connexin has also agreed to seek SOC II certification over the next four years, which will entail meeting a set of compliance standards representing best practices for storage of customer data, and continue to invest in other business changes directed at strengthening its data and information security. Connexin estimates that these upgrades will cost in the range of $1,500,000.00.

Class Members will have 90 days to submit claims and 45 days to either object to or opt-out from the settlement. Notice will be sent directly to Class Members based on the same initial list that was used to provide notification of the Data Security Incident. Within 14 days after the issuance of the Preliminary Approval Order, Connexin will send the Administrator a list of any and all names, addresses, telephone numbers, and email addresses of Class Members that it has in its possession, custody, or control. Notice will begin within 35 days after Connexin funds the Settlement Fund. Notice will also be provided through targeted social media sources. The parties have selected Epiq Class Action & Claims Solutions, Inc. ("Epiq") to serve as the Claims Administrator. Epiq will be paid from the Settlement Fund, and has agreed to perform this work for a "not to exceed" cap of $992,187.00.

The Settlement Agreement provides (and the Settlement Notice will indicate) that Class Counsel will seek up to one-third of the Settlement Fund as attorneys' fees, reasonable litigation expenses (not to exceed $50,000) and Service Awards of $2,500 to each of the Plaintiffs. Whatever amounts are ultimately approved by the Court for these categories will also be paid from the gross Settlement Fund. Connexin has reserved the right to comment on or object to these requests.

In exchange for the foregoing, Connexin will receive a release that is tailored to claims that were brought or that could have been asserted by Class Members related to the Data Security Incident.

## IV.    LEGAL STANDARDS

### A.    The Two-Step Procedural Process for Settlement Approval

"Review of [a] proposed Rule 23 class settlement typically proceeds in two steps: (1) a preliminary approval and (2) a subsequent fairness hearing." *Caddick v. Tasty Baking Co.,* No. 2:19-cv-02106-JDW, 2021 WL 1374607, at *2 (E.D. Pa. Apr. 12, 2021) (citing *In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 713–14 (E.D. Pa. 2014)). At the preliminary approval stage, "[t]he Court must be given information to allow it to 'determine whether to give notice of the proposal to the class.'" *In re Wawa, Inc. Data Sec. Litig.,* No. 19-cv-6019, 2023 WL 6690705, at *2–3 (E.D. Pa. Oct. 12, 2023) (quoting Fed. R. Civ. P. 23(e)(1)(A)). In deciding whether to provide this notice, "the parties must demonstrate that 'the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(1)(B)).

As Judge Goldberg recently stated, the decision of whether to approve a settlement is ultimately "'left to the sound discretion of the district court.'" *See In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.,* No. 13-md-2445, 2023 WL 8437034, at *5 (E.D. Pa. Dec. 4, 2023) (herein after "*In re Suboxone*") (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).  Judge Goldberg also recognized that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *Id.* (collecting cases). *See also Ricci v. Newrez LLC*, No. 5:22-cv-0650, 2023 WL 6879344, at *2 (E.D. Pa. Oct. 17, 2023) ("The law favors settlement, particularly in class

actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995)).

**B.      The Fed. R. Civ. P. 23(e) Standard for Fairness**

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement, to wit: whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

**C.      The *Girsh, Prudential,* and *Baby Products* Standards for Fairness**

In addition to the foregoing criteria under Rule 23(e), the Third Circuit has identified in a series of three cases (*Girsh, Prudential,* and *Baby Products*), a set of factors that should be considered in assessing the fairness of a settlement. *See In re Suboxone,* 2023 WL 8437034, at *4–6. The so-called *Girsh* factors, from the first of these cases, are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at *5 (quoting *Girsh,* 521 F.2d at 157).

The additional "*Prudential* factors" that the Third Circuit subsequently added to the

*Girsh* analysis are:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Suboxone,* 2023 WL 8437034, at *5 (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions,* 148 F.3d 283, 323 (3d Cir. 1999)). And more recently in *In re Baby Products Antitrust Litig.,* 708 F.3d 163 (3d Cir. 2013), the Third Circuit added that "one of the additional inquiries for a thorough analysis of settlement terms is the degree of direct benefit provided to the class." *Id.* at 174.

## V.    ARGUMENT

Each of the relevant factors supports the fairness of the settlement here.

### A.    The Settlement Satisfies the Applicable Rule 23(e), *Girsh, Prudential,* and *Baby Products* Requirements

#### 1.    *The Complexity, Expense and Likely Duration of the Litigation*

This factor is "easily met here" given that this case is a complex data breach class action where the law "has not yet been fully developed" and the parties here would be facing "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial." *In re Wawa, Inc. Data Sec. Litig.,* 2023 WL 6690705, at *7.

2.      *The Reaction of the Class to the Settlement*

This factor cannot be fully evaluated until notice is issued to the class; if anything, it is neutral at this point. *See In re Wawa, Inc. Data Sec. Litig.,* 2023 WL 6690705, at *7 ("Provided that the notice to class members ensures that affected financial institutions have an adequate amount of time to object to the settlement, the Court does not see any substantial issues on the second factor at this time."). Plaintiffs will address this factor when they move for final approval.

3.      *Stage of Proceedings and Amount of Discovery Completed*

As noted above, the parties conducted substantial formal and informal discovery and were past the Court's ruling on the motion to dismiss at the time they executed a term sheet. This factor, therefore, supports approval of the settlement. *See In re Suboxone,* 2023 WL 8437034, at *7 (finding that "the parties had a well-developed appreciation of the merits of the case prior to negotiation" within the meaning of this *Girsh* factor when the case had been extensively litigated).

4.      *Risks of Establishing Liability, Damages and Maintaining Class Status Through Trial*

"These three *Girsh* factors require the Court to 'survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement.'" *Fulton-Green v. Accolade, Inc.,* No. 18-cv-274, 2019 WL 4677954, at *10 (E.D. Pa. Sept. 24, 2019) (*quoting In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004)). In doing so, the Court need not "delve into the intricacies of the merits of each side's arguments, but rather may give credence to the estimation of the probability of the success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *In re Wawa,*

*Inc. Data Sec. Litig.*, No. 19-6019, 2022 WL 1173179, at *6 (E.D. Pa. Apr. 20, 2022) (quoting *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (internal quotation marks omitted)).

The risks associated with Plaintiffs obtaining class certification and withstanding the various arguments going to the merits of their case based on a fully developed factual record – to say nothing of the financial distress under which Connexin was operating – demonstrate that this factor is met. *Fulton-Green*, 2019 WL 4677954, at *10 ("The Court agrees that the risks of continued litigation and maintaining the class action weigh in favor of an early resolution."). *See also Gaston v. FabFitFun, Inc*., No. 2:20-cv-09534-RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."). The Ability of the Defendant to Withstand a Greater Judgment

For the reasons discussed above, this *Girsh* factor is exceptionally relevant in this case and strongly supports the fairness of the settlement. *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011) ("The Court believes this factor is most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement."); *see also McDermid v. Inovio Pharms., Inc.,* No. 20-cv-01402, 2023 WL 227355, at *8 (E.D. Pa. Jan. 18, 2023) ("[The settling defendant's] likely inability to pay a significantly greater judgment than the settlement amount favors the deal."); *In re Suboxone,* 2023 WL 8437034, at *8 (observing that the class action settlement provided the class with "a greater guarantee that they would be able to collect on their judgment" where the settling defendant had significant financial obligations elsewhere). Indeed, this point underscores why the recovery achieved by Plaintiffs' counsel

here is an outstanding result given this reality. And even if Connexin theoretically may have had the ability to fund (or secure funding for) a greater settlement—a fact which Connexin steadfastly argued against— "courts within the Third Circuit 'regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts.'" *Kelly, v. Santander Consumer USA, Inc.,* No. 20-cv-3698, 2023 WL 8701298, at *4 (E.D. Pa. Dec. 15, 2023) (quoting *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013)).

### 5.    *The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation*

These two *Girsh* factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Kelly,* 2023 WL 8701298, at *4 (E.D. Pa. Dec. 15, 2023) (quoting *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 440 (3d Cir. 2016)). The Settlement here creates a $4 million fund that will be utilized to either give class members a cash payment or, if they prefer, enhanced credit monitoring. This recovery is on par with comparable data breach class settlements. *In re Wawa, Inc. Data Sec. Litig.,* 2022 WL 1173179, at *7 ("The settlement amount here compares favorably with other data breach settlements, many of which are quite modest. Being modest does not make a settlement insufficient or unsupportable.").

The adequacy of this relief is further apparent when considering the upcoming litigation obstacles Plaintiffs faced, as well as Connexin's own financial issues which could have ultimately resulted in its filing for bankruptcy. *In re Wawa, Inc. Data Sec. Litig.,* 2023 WL 6690705, at *10 (finding that a settlement that was "negotiated at arm's-length before Judge Welsh, is especially reasonable when there is a high probability that proceeding in this case would yield nothing for the 5,000 financial institutions.") *See also Jackson v. Wells*

*Fargo Bank, N.A.,* 136 F. Supp. 3d 687, 706 (W.D. Pa. 2015) ("After considering the present-day-value of money, the likelihood that the class would recover less than its maximum actual damages, all of the attendant risks of litigation, and the interests in resolution, such a recovery is well within the range of reasonableness.").

### 6. *The Additional Prudential and Baby Products Factors Support the Fairness of the Settlement*

The additional factors from *Prudential* include "'whether class or subclass members are accorded the right to opt out of the settlement; whether any provision for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.'" *In re Wawa, Inc. Data Sec. Litig.,* 2023 WL 6690705, at *10 (quoting *Prudential*, 148 F.3d at 323). And the *Baby Products* court considered the "degree of direct benefit to the class." *Kelly,* 2023 WL 8701298, at *4.

Class Members are afforded the opportunity to opt-out both by virtue of Rule 23 and the Settlement Agreement itself. As discussed above – and as will be addressed in more detail in Plaintiffs' forthcoming motion for attorneys' fees – the requested fee amount is reasonable. And the procedure for processing claims is consistent with what has been approved in other similar cases and because the settlement fund is non-reversionary, the relief is targeted to go completely to the class.

### 7. *The Proposal Was Negotiated at Arm's Length [Fed. R. Civ. P. 23(e)(2)(B)]*

This factor is met because the settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this litigation and was reached under the auspices of a highly experienced mediator. *Stechert v. Travelers Home & Marine Ins. Co.,* No. 17-cv-0784-KSM, 2022 WL 2304306, at *6 (E.D. Pa. June 27, 2022) ("…the parties worked with the Honorable

Diane M. Welsh, an experienced mediator and former magistrate judge, to facilitate arm's length negotiations, which weighs in favor of finding adequacy.").

8.    ***The settlement provides for an effective method of distributing relief to the class, including through a simplified claims process [Fed. R. Civ. P. 23(e)(2)(C)(ii)]***

This factor is met because the Settlement creates a straight-forward claims procedure for Class Members to claim credit monitoring, reimbursements for out-of-pocket expenses, or the alternative cash payment. *See In re Canon U.S.A. Data Breach Litig.,* No. 20-cv-6239-AMD-SJB, 2023 WL 7936207, at *4 (E.D.N.Y. Nov. 15, 2023) (granting preliminary approval to data breach settlement under which class members could claim ordinary losses, extraordinary losses, and credit monitoring).

9.    ***The proposed attorneys' fee award is reasonable [Fed. R. Civ. P. 23(e)(2)(C)(ii)]***

Interim Co-Lead Counsel have devoted significant time and financial resources to the litigation despite the uncertainty of prevailing as to class certification and the merits and establishing damages. Given that Plaintiffs' counsel have undertaken this case on a contingency fee basis and actively litigated it for over a year, they will request that attorneys' fees in the amount of one-third of the settlement be approved. This amount has been found reasonable in the Third Circuit. *McIntyre v. RealPage, Inc.,* No. 18-cv-03934, 2023 WL 2643201, at *3, n.5 (E.D. Pa. Mar. 24, 2023) (finding a fee request of 1/3 of a fund to be "'squarely within the range of awards found to be reasonable by the courts.'") (quoting *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 18-cv-1370, 2020 WL 3481458, at *19 (W.D. Pa. June 26, 2020)); *Ahrendsen v. Prudent Fiduciary Servs., LLC*, No. 21-cv-2157, 2023 WL 4139151, at *5 (E.D. Pa. June 22, 2023) ("class counsel reasonably seeks one-third of the settlement fund…for attorneys' fees"); *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.,* No.

17-cv-341, 2022 WL 16533571, at *8 (E.D. Pa. Oct. 28, 2022) ("The fees requested constitute one third of the Settlement fund, which is within a reasonable range given both lead counsel's efforts in a challenging action made more complex by certain adverse facts and a comparison with fee awards in other Third Circuit class action settlements.") (citations omitted); *In re Suboxone,* 2023 WL 8437034, at *16 (same).

Notably, Connexin has not agreed to make this payment; it has specifically reserved the right under the Settlement Agreement to challenge or object to the amount of fees sought. *Cf. In re Wawa, Inc. Data Sec. Litig.,* 85 F.4th 712, 725 (3d Cir. 2023) ("Though not an automatic bar to settlement approval, such [clear sailing] terms still 'deserve careful scrutiny' when calculating a reasonable fee award.") (quoting *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 447)). This factor supports approval of the settlement.

### 10.    *The Settlement Treats Class Members Equitably Relative to Each Other [Fed. R. Civ. P. 23(e)(2)(D)]*

As discussed *supra,* the Settlement treats all Class Members equitably in that it provides all of them with the same convenient means to recover the same menu of options under the Settlement. This plan of allocation supports this Settlement. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) ("A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'") (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)).

### 11.    *There are no additional agreements required to be identified [Fed. R. Civ. P. 23(e)(2)(C)(iv)]*

Rule 23(e)(2)(C)(iv) requires courts to consider any agreement among the parties outside of the settlement agreement: "The parties seeking approval must file a statement

identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).
No such agreement – other than the Settlement Agreement itself – exists in this case.

**B.    The Court Should Certify the Class for Settlement Purposes**

"In addition to reviewing the terms of settlement, a court at the preliminary approval
stage may conditionally certify the class for purposes of providing notice, with the final
certification decision to be made at the subsequent fairness hearing." *Checchia v. Bank of
Am., N.A.,* No. 21-cv-3585, 2023 WL 2051147, at *2 (E.D. Pa. Feb. 16, 2023) (citing *In re
Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 199-200 (E.D. Pa.
2014)). Courts may certify settlement classes that satisfy the requirements of Rule 23(a) and
at least one provision of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-22
(1997); *Fulton-Green v. Accolade, Inc.,* No.  18-cv-274, 2019 WL 316722, at *2 (E.D. Pa.
Jan. 23, 2019). As set forth below, the Settlement Class meets the applicable criteria of Rules
23(a) and 23(b)(3) and should, therefore, be certified for settlement purposes.

**1.    *The Class Is Sufficiently Numerous***

The Class in this case, approximately 3 million individuals, far exceeds the standard
necessary to satisfy the Rule 23(a)(1) requirement that it be "so numerous that joinder of all
members is impracticable." *See Gates v. Rohm & Haas Co.,* 248 F.R.D. 434, 439 (E.D. Pa.
2008) (class of more than 40 potential plaintiffs generally meets numerosity requirement).

**2.    *There Are Questions of Law or Fact Common to the Class***

"Rule 23(a)(2)'s commonality element requires that the proposed class members share
at least one question of fact or law in common with each other." *Warfarin*, 391 F.3d at 527-
28. The commonality threshold is low and does not require an "identity of claims or facts
among class members." *Gates*, 248 F.R.D. at 440. "[F]or purposes of Rule 23(a)(2), even a

single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation and alterations omitted).

Here, there are multiple common questions related to Plaintiffs' negligence claim. As Judge Pratter recently observed in finding this requirement satisfied in the *Wawa* litigation, "each of the class members would have to prove by a preponderance of the evidence that Wawa owed a duty to each financial institution to protect its credit card data. They would all have to show that Wawa's specific negligent acts or omissions caused the data breach to occur and whether proximate cause existed." *In re Wawa, Inc. Data Sec. Litig.,* 2023 WL 6690705, at *4. These common issues are present in this case too.

### 3.    *The Class Representatives' Claims Are Typical of the Claims of the Class*

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Hall v. Accolade, Inc.*, No. 17-3423, 2019 WL 3996621, at *7 (E.D. Pa. 2019). Typicality is satisfied where there is a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 428 (internal citation omitted). Here, the claims of the Class Representatives are "not only similar to those of other class members but are virtually identical." *Fulton-Green*, 2019 WL 316722, at *4. Specifically, the claim of each Plaintiff "stems from [defendant's] data security measures and whether they were adequate to protect [the sensitive, compromised data]." *In re Wawa, Inc. Data Sec. Litig.,* 2023 WL 6690705, at *4. Typicality is, therefore, satisfied here.

4.      ***The Class Representatives and Co-Lead Counsel Will Fairly and Adequately Represent the Class***

Rule 23(a)(4) requires the Court to assess whether the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

> Essentially, the inquiry into the adequacy of the representative parties examines whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class.

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.*, 296 F.R.D. 351, 361 (E.D. Pa. 2013) (citations and internal quotation marks omitted).

Here, the Plaintiffs have been actively involved in the litigation of this case. They have all responded to Connexin's written discovery request and have each prepared and sat for a deposition. Their interests and those of the other Class Members are aligned: all are equally interested in proving the factual averments in the complaint, establishing Connexin's liability, and obtaining a recoverable judgment or settlement. And the Plaintiffs have retained well-qualified counsel who have successfully prosecuted many class actions, including many actions arising from data breaches.

Interim Co-Lead Counsel have vigorously prosecuted the action and have devoted substantial effort and resources on behalf of the Class. They respectfully submit that they have demonstrated their adequacy here. *Meyers v. Onix Grp., LLC,* No. 23-cv-2288-KSM, 2023 WL 4630674, at *2 (E.D. Pa. July 19, 2023) ("Mr. Johns, specifically, has almost 20 years of experience with complex class action cases and has been appointed Lead Counsel in data breach cases over a dozen times in various jurisdictions across the country; he has been appointed Lead Counsel in the Eastern District of Pennsylvania no less than three times.") (citations omitted).

**5.** ***Common Issues Predominate over any Individual Issues and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy***

In addition to satisfying the criteria under Rule 23(a), the proposed Settlement Class must meet one of the criteria under Rule 23(b). Plaintiffs seek to certify a class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class meets both requirements.

**a.    Common issues predominate**

"Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if common questions of law or fact predominate questions arguably affecting only individuals." *Fulton-Green*, 2019 WL 4677954, at *6.  "When examining whether certain issues predominate, a court looks to see if "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *In re Wawa, Inc. Data Sec. Litig.,* No. 19-cv-6019, 2021 WL 3276148, at *4 (E.D. Pa. July 30, 2021) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

As Judge Pratter recently found in granting preliminary approval in the *Wawa* litigation, "there is a myriad of questions of law and fact that predominate." *In re Wawa, Inc. Data Sec. Litig.,* 2021 WL 3276148, at *4. Those included whether the defendant owed a duty to class members to safeguard their sensitive information; whether the defendant breached that duty; whether the defendant knew or should have known that its payment processing systems were susceptible to attack; whether the defendant complied with industry and; whether the defendant's conduct or failure to act was the proximate cause of the breach; and

whether plaintiffs and the class members are entitled to recovery. *See id.* These same issues likewise predominate here.

### b.    A class action is superior to other means of adjudication

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Processed Egg Prods.*, 284 F.R.D. at 264. The rule suggests that courts consider the following factors when making a superiority determination:  "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, all four considerations weigh in favor of certifying the Settlement Class. There is no indication that Class Members would be interested in litigating individually or that the litigation should proceed in a non-class forum. In addition, the cost and complexity of litigation would preclude the vast majority of Class Members from filing suit individually.[6] The class action Settlement, in contrast to adjudicating individual or class cases, provides Class Members with an immediate monetary benefit. *See Fulton-Green*, 2019 WL 316722, at *4.

---

[6] Because the Parties request certification for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . [because] the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *accord Sullivan*, 667 F.3d at 322 n.56; *Processed Egg Prods.*, 284 F.R.D. at 264.

**C.    The Notice Program Provides Class Members with the Best Notice Practicable Under the Circumstances**

Once the parties show that the "court will likely be able to: (i) approve the proposal under Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal," then the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Rule 23(e)(1)(B). Pursuant to Rule 23(c)(2)(B), the notice must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

There are three aspects to notice requirements under Rule 23 and fundamental due process: (1) notice must be disseminated in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"; (2) the content must be of "such nature as reasonably to convey the required information"; and (3) the notice must "afford a reasonable time for those interested to make their appearance" and exercise their options to file a claim, object, or opt out of the class. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (internal citations omitted); *see also In re Nat'l Football League Players Concussion Injury Litig.,* 775 F.3d 570, 583 (3d Cir. 2014) (principal purpose of notice provision of Rule 23(e)(1) is to "ensure that absentee class members, for whom a settlement will have preclusive effect, have an opportunity to review the materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the court approves or rejects the settlement") (quoting 2 MCLAUGHLIN ON CLASS ACTIONS § 6:17 (10th ed. 2013)). The Notice Program achieves all of these objectives.

1.      *Notice Will Reach Significant Numbers of Class Members*

Rule 23, as amended in 2018, "does not specify any particular means" as the "preferred" means of notice, instead directing courts and counsel to "focus on the means or combination of means most likely to be effective in the case before the court." Advisory Committee Note, 2018 amendment to Rule 23(c)(2)(B). "A notice must provide 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *In re Canon U.S.A. Data Breach Litig.,* 2023 WL 7936207, at *6 (quoting Fed. R. Civ. P. 23(c)(2)(B)).

The Parties expect notice to reach virtually all of the proposed Class. Notice of the settlement will be provided by postcard, to the same list of approximately 2,846,187 class members that were initially mailed notice of the incident.

2.      *The detailed notice form, and settlement website clearly and concisely inform Class Members about their rights and options, including how to file a claim*

As required by Rule 23(2)(B), the proposed Long Form notice attached as **Ex. B** to the Settlement Agreement "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." It also describes the terms of the Settlement, including requests for attorneys' fees; informs Class Members about their right to object to the Settlement; provides the date, of the Final Approval hearing; and provides contact information for Co-Lead Counsel and the Settlement Administrator.

The Notice Program will inform Class Members of the deadlines for objecting to the settlement and excluding themselves from the Class. The deadlines themselves are reasonable. *See Nat'l Football League,* 301 F.R.D. at 203 ("It is well-settled that between 30 and 60 days is sufficient to allow class members to make their decisions to accept the settlement, object, or exclude themselves.").

In sum, the Notice Program is reasonable, is designed to reach Class Members efficiently, provides the information and time that Class Members need to protect their rights, and is the best notice practicable under the circumstances. *See Warfarin* 391 F.3d at 536-37 (where parties did not have access to names and addresses of the "multitude of people nationwide who purchased" the product at issue, a notice plan that did not include any individual direct mail notice was a "reasonable effort" to provide the "best notice practicable under the circumstances").

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval to the parties' proposed settlement, certify the class for settlement purposes, authorize the issuance of notice to the class pursuant to Fed. R. Civ. P. 23(e)(1), and schedule a final approval hearing in accordance with Fed. R. Civ. P. 23(e)(2). Plaintiffs propose the following schedule as set forth in the Settlement Agreement and proposed preliminary approval Order:

| Event | Time for Compliance |
|---|---|
| Connexin provides notification to the appropriate state and federal officials in accordance with 28 U.S.C. § 1715 | No later than 10 days after this motion is filed. |
| Notice Issuance Date and Launch of Settlement Website (the "Notice Date") | 35 days after Connexin funds the Settlement Fund |
| Deadline for Class Counsel's Application for Attorneys' Fees, Expenses, and Service Awards | 50 days after the Notice Date |

| Opt-Out and Objection Deadline | 60 days after the Notice Date |
|---|---|
| Deadline for Motion in Support of Final Approval of Settlement | 21 Days Before the Final Approval Hearing |
| Claims Deadline | 90 days after the Notice Date |
| Final Approval Hearing | No earlier than 120 days after entry of Preliminary Approval Order |

Dated: February 14, 2024                  Respectfully submitted,


_____*/s/ Benjamin F. Johns*_____
Jonathan Shub
Benjamin F. Johns
Samantha E. Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
(610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

_____*/s/ Bart D. Cohen*_____
Bart D. Cohen
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
(215) 274-9420
bcohen@baileyglasser.com

*Plaintiffs' Interim Co-Lead Counsel*

Andrew Ferich
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
T: (310) 474-9111
F: (310) 474-8585
aferich@ahdootwolfson.com

Mark B. DeSanto
**BERGER MONTAGUE**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
mdesanto@bm.net

Danielle Perry
**MASON LLP**
5101 Wisconsin Avenue, NW, Suite 305
Washington, DC 20016
Tel: (202) 429-2290
dperry@masonllp.com

Marc Edelson
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
(215) 867-2399
medelson@edelson-law.com

Michael McShane
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Ste 500
San Francisco, CA 94102
(415) 568-2555
mmcshane@audetlaw.com

*Plaintiffs' Steering Committee*